UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,               Case No. 22-cr-20505
                                          HON. LAURIE MICHELSON

v.

JAMAR LEE-STINSON,

        Defendant.
_____/

## MOTION TO SUPPRESS

Jamar Lee-Stinson, through counsel, respectfully requests that this Court, pursuant to Fed. R. Crim. P. 12(b)(3)(C), and the Fourth Amendment, suppress the evidence seized during the execution of an unconstitutional search warrant for his residence at XXX28 Shiawassee St., Apt XXX, Building XX, in Southfield, Michigan. In support, Mr. Lee-Stinson states the following:

1. Mr. Lee-Stinson is charged by Indictment with one count of carjacking in violation of 18 U.S.C. § 2119 and one count of discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c).

2. On December 2, 2021, a state court judge authorized an application to search Mr. Lee-Stinson's residence ("Shiawassee") and his person. Officers sought evidence of firearms or ammunition, including parts and accessories, information regarding the ownership of the Shiawassee residence, clothing worn during a

1

documented incident, and Mr. Lee-Stinson's cell phone. *See* Ex. A, *Search Warrant Affidavit*.

3. According to the affidavit authored by Detroit Police Officer Troy Williams ("affiant"), the following information established probable cause to search:

   a. Detroit police officers responded to a BP gas station in Detroit, Michigan on November 8, 2021 on a "shots fired" police run. Witnesses told officers that "multiple black males" were in a verbal altercation that resulted in exchange of gun fire. Officers reviewed greenlight video surveillance from the gas station and recovered several 9 mm and .40 caliber shell casings from the scene, which officers subsequently entered into the National Integrated Ballistic Information Network ("NIBIN").

   b. The recovered shell casings matched .40 caliber shell casings recovered from other documented incidents and "were likely fired from the same gun."

   c. On November 24, 2021, affiant and Detective Jeb Rutledge met with Detroit police officer Terrell Williams reviewed surveillance footage from the BP gas station of the November 8th incident and observed the following:

      i. On November 8, 2021 at approximately 7:00 PM, a black male (with a medium-dark complexion and braids, wearing a black zip-up jacket with two white stripes on the sleeves of the jacket, dark colored jeans and a white shirt underneath, referred to as "SUSPECT 1") exited the passenger seat of a gray Chevrolet Malibu. Another black male (wearing a face mask) and a black female also exited the Malibu.

      ii. These three individuals entered the BP gas station. Two unknown black males entered the gas station. One of these individuals gripped the handle of a firearm in his right front pocket as he passed SUSPECT 1. SUSPECT 1 then removed a firearm from his waistband and placed it on the gas station counter.

      iii. SUSPECT 1 purchased items, retrieved his firearm from the counter and exited the gas station. Surveillance shows him

2

           appearing to be engaging in a verbal altercation with the two unknown black males.

       iv. SUSPECT 1 enters the passenger side of the Malibu. The individuals in the Malibu and the two unknown black males engage in gun fire. Afterwards, the Malibu fled.

  d. In November 2021, Officer Terrell Williams captured an image of SUSPECT 1 from the gas station surveillance footage. An intelligence analyst with DPD performed an analysis and issued an investigative lead report which identified SUSPECT 1 as Mr. Lee-Stinson.

  e. Affiant ran a criminal history check for Mr. Lee-Stinson, which revealed that Mr. Lee-Stinson is a convicted felon.

  f. On November 24, 2021, affiant and Detective Jeb Rutledge learned of the Shiawassee residence. On November 29, 2021, Sgt. Brandon Shortridge confirmed with the Shiawassee property management company that Mr. Lee-Stinson was the leaseholder of the Shiawassee property.

  g. On December 1, 2021, Detective Rutledge and Officer Stuart Martin "acting in a undercover capacity performed a ruse" at Shiawassee. According to Detective Rutledge, Mr. Lee-Stinson opened the door at Shiawassee.

  h. On December 2, 2021, Officer Williams interviewed "an associate" of Mr. Lee-Stinson, who stated he has only known Mr. Lee-Stinson for "approximately 1-2 years," and who identified SUSPECT 1 from a screen capture of the gas station surveillance video as "Mar."

4. During the search of Shiawassee on December 3, 2021, officers recovered several firearms, ammunition, an iPhone, clothing, and a DTE bill addressed to Mr. Lee-Stinson.

5. Officers' search of Shiawassee was conducted in violation of Mr. Lee-Stinson's Fourth Amendment rights. The affidavit in support of the search warrant

3

application did not provide probable cause to believe that the home would contain evidence of any crime. *See* U.S. Const. amend. IV.

6. Officers cannot claim they acted in good faith reliance on the warrant. The warrant lacked sufficient indicia of probable cause to justify reliance.

7. Because officers entered and searched the Shiawassee residence with a facially deficient warrant in violation of Mr. Lee-Stinson's Fourth Amendment rights, the evidence seized must be suppressed as fruits of an unlawful search. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

8. Counsel for the government does not concur. *See* L.R. 7.1.

WHEREFORE, Mr. Lee-Stinson respectfully respects this Court suppress all evidence seized during the unlawful search warrant execution.

Respectfully submitted,

**FEDERAL COMMUNITY DEFENDER**

*s/Daniel S. Dena*
*s/Celeste C. Kinney*
Attorneys for Mr. Lee-Stinson
613 Abbott St., Ste. 500
Detroit, Michigan 48226
(313) 967-5542
daniel_dena@fd.org

Dated: March 9, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                  Case No. 22-cr-20505
                                         HON. LAURIE MICHELSON
v.

JAMAR LEE-STINSON,

        Defendant.
_____/

## BRIEF IN SUPPORT OF MOTION TO SUPPRESS

Any officer working in this jurisdiction knows "[t]he critical element in a reasonable search is not that the owner of the property is suspected of a crime but that there is reasonable cause to believe that the specific 'things' to be searched for an seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978); *see also Id.* at 556, n. 6. Yet the affiant, Officer Williams, failed to articulate any sufficient basis to establish a nexus between the Shiawassee residence and his belief that evidence of firearms would be found inside the residence. *See* Ex. A. Despite this obvious deficiency, a state court judge authorized the search warrant. Relying on the facially deficient warrant, Detroit police officers conducted a search of the Shiawassee residence in violation of the Fourth Amendment.

I. **FACTUAL BACKGROUND**

Detroit police officer Troy Williams submitted a ten-page affidavit in support of his application for a search warrant in furtherance of a firearms investigation. The affidavit sought authorization to search Mr. Lee-Stinson's residence in Southfield, Michigan and his person for evidence of firearms. The affidavit largely focuses on a gun fire exchange that occurred on November 8, 2021 at a BP gas station in Detroit, Michigan.

### *November 8, 2021 BP Gas Station Shooting*

The search warrant begins with Detroit police officers' investigation of a gun fire exchange at a BP gas station. *See* Ex. A. Witnesses told officers that "multiple black males" were in a verbal altercation that resulted in exchange of gun fire. Officers reviewed greenlight video surveillance from the gas station and recovered several 9 mm and .40 caliber shell casings from the scene, which officers subsequently entered into the National Integrated Ballistic Information Network ("NIBIN"). The recovered shell casings matched .40 caliber shell casings recovered from other documented incidents and "were likely fired from the same gun." On November 24, 2021, affiant and Detective Jeb Rutledge met with Detroit police officer Terrell Williams reviewed surveillance footage from the BP gas station of the November 8th incident and observed that at approximately 7:00 PM, a black male (with a medium-dark complexion and braids, wearing a black zip-up jacket with two white stripes on the sleeves of the jacket, dark colored jeans and a white shirt underneath, referred to as "SUSPECT 1") exited

6

the passenger seat of a gray Chevrolet Malibu. Another black male (wearing a face mask) and a black female also exited the Malibu. These three individuals entered the BP gas station. Two unknown black males entered the gas station. One of these individuals gripped the handle of a firearm in his right front pocket as he passed SUSPECT 1. SUSPECT 1 then removed a firearm from his waistband and placed it on the gas station counter. SUSPECT 1 purchased items, retrieved his firearm from the counter and exited the gas station. SUSPECT 1 enters the passenger side of the Malibu. The individuals in the Malibu and the two unknown black males engage in gun fire. Afterwards, the Malibu fled.

In November 2021, Officer Terrell Williams captured an image of SUSPECT 1 from the gas station surveillance footage. An intelligence analyst with DPD performed an analysis and issued an investigative lead report which identified SUSPECT 1 as Mr. Lee-Stinson. Affiant ran a criminal history check for Mr. Lee-Stinson, which revealed that Mr. Lee-Stinson is a convicted felon.

### *Shiawassee Residence*

On November 24, 2021, affiant and Detective Jeb Rutledge learned of the Shiawassee residence. On November 29, 2021, Sgt. Brandon Shortridge confirmed with the Shiawassee property management company that Mr. Lee-Stinson was the leaseholder of the Shiawassee property.

On December 1, 2021, Detective Rutledge and Officer Stuart Martin "acting in a undercover capacity performed a ruse" at Shiawassee. According to Detective Rutledge, Mr. Lee-Stinson opened the door at Shiawassee.

On December 2, 2021, Officer Williams interviewed "an associate" of Mr. Lee-Stinson, who stated he has only known Mr. Lee-Stinson for "approximately 1-2 years," and who identified SUSPECT 1 from a screen capture of the gas station surveillance video as "Mar."

Based on this information, officers sought, and received from a state court judge, authorization to search the Shiawassee residence and Mr. Lee-Stinson's person.

## II. LEGAL STANDARD

The Fourth Amendment requires all warrants issued to be supported by probable cause and an "[o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "To establish probable cause adequate to justify issuance of a search warrant, the governmental entity or agent seeking the warrant must submit to the magistrate an affidavit that establishes 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (quoting *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (internal citation omitted)).

A "state search warrant being challenged in a federal court must be judged by federal constitutional standards." *United States v. McManus*, 719 F.2d 1395, 1397 (6th Cir. 1983). When presented with an application for a search warrant, the magistrate judge

8

must evaluate the totality of the "circumstances set forth in the affidavit" to determine whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Illinois v. Gates* 462 U.S. 213, 238 (1983). In other words, the affidavit submitted to the magistrate judge must describe a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter,* 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (internal quotations omitted). District courts reviewing the sufficiency of a warrant application must ensure the magistrate judge had a "substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238-39 (alteration and internal quotation marks omitted).

### III. ANALYSIS

#### a. The search warrant affidavit does not establish a sufficient nexus between the Shiawassee residence and evidence to be seized

The Fourth Amendment requires the warrant applicant to "demonstrate a nexus between the evidence sought and the place to be searched." *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (citing *Carpenter*, 360 F.3d at 594 (6th Cir. 2004)). The Sixth Circuit has repeatedly cautioned that "[t]he connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *Id.* "[I]f the affidavit fails to include facts that directly connect the residence with the suspected [criminal] activity, or the evidence of this connection is unreliable," a magistrate judge cannot infer that evidence of a crime will be found in a suspect's home. *Id.* at 384.

The only bases offered to support the inference that evidence of firearms might be found at the Shiawassee residence are: (1) Mr. Lee-Stinson's alleged involvement in a shooting at a gas station in Detroit; (2) law enforcement's knowledge that Mr. Lee-Stinson likely lives at the Shiawassee address; and (3) a generalized suspicion that Lee-Stinson would keep a firearm at his residence. The warrant application for Shiawassee presented only "a pyramid of untenable inferences"—the very practice the Supreme Court and the Sixth Circuit have condemned. *United States v. Norwood*, 989 F. Supp. 2d 570, 577 (E.D. Mich. 2013) (Goldsmith, J).

In *Zurcher*, the Supreme Court made clear that the mere fact a person is suspected of committing a crime is insufficient to conclude "the specific 'things' to be searched for and seized are located at the property to which entry is sought." 436 U.S. at 556. Following this guidance, the Sixth Circuit rejected "the proposition that the defendant's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home." *United States v. Frazier*, 423 F.3d 526, 532-33 (6th Cir. 2005). Though the present case involves firearms instead of drugs, the same principle applies. The Supreme Court has repeatedly stressed that arrest warrants are not search warrants. *Steagold v. United States*, 451 U.S. 204, 213-15 (1981); *see also United States v. Archibald*, 589 F.3d 289, 295 (6th Cir. 2009). Although both types of warrants must satisfy a probable-cause standard, the inquiries are different. Judges may issue arrest warrants "upon a showing that probable cause exists to believe that the subject of the warrant has committed an offense." *Steagold*, 451 U.S. at 213. Search warrants, in contrast, protect

"an individual's interest in the privacy of his home and possessions against the unjustified intrusions of the police," and therefore require a different showing: "probable cause to believe that the legitimate object of a search is located in a particular place." *Id.*

In this case, information regarding the Shiawassee residence sparse. In fact, the totality of the information presented specifically about the Shiawassee residence in the ten-page affidavit is as follows:

> On November 24, 2021, PO Troy Williams and Det. Jeb Rutledge received intelligence that LEE-STINSON currently resides at XXX28 Shiawassee Street APT #XXX building #XX, Southfield MI 48XXX (hereinafter referred to as the TARGET PREMISES).
>
> On November 29, 2021, Sgt. Brandon Shortridge made contact with the management company of the TARGET PREMISES. Personal of the management company advised Sgt. Shortridge that LEE-STINSON is the lease holder of the TARGET PREMISE and has been so for approximately one month.
>
> On December 1, 2021, Det. Jeb Rutledge and PO Stuart Martin acting in an undercover capacity performed a ruse at the TARGET PREMISES. According to Det. Jeb Rutledge a black male opened the door to the target premises wearing only underwear and no shirt. Det. Rutledge, having seen the aforementioned surveillance footage [of the BP gas station shooting] multiple times, the below screen captures from the BP surveillance footage titled Image 5 and 6, and a Michigan state ID photograph of LEE-STINSON, concluded that the black male who opened the door to the TARGET PREMISES and SUSPECT 1 from the BP surveillance footage are same individual which is LEE-STINSON.

Ex. A at LEE-STINSON-00200. Out of a *ten-page affidavit* seeking to search the Shiawassee residence, *only three paragraphs* are dedicated to the officers'

11

investigation of the residence. And those three paragraphs add nothing to a finding of probable cause that firearms would be found at the home. The affidavit does not describe any extended observations by officers of the Shiawassee residence; it does not indicate that a confidential informant or any third-party provided officers with information regarding the Shiawassee residence and firearms; and it does not allege that officers observed Mr. Lee-Stinson with firearms, or appearing as if he had firearms, at the Shiawassee residence. Considering this, the Court should give little weight to the affiant's generalized suspicion that firearms would be found in the home based on his training and experience, as the affiant describes nothing that would support that suspicion in this case.

There is no question that the affidavit includes facts that create a reasonable probability that Mr. Lee-Stinson possessed guns at the BP gas station. But as to the Shiawassee residence, all the affidavit does is provide probable cause that Mr. Lee-Stinson *lives* there. According to the Supreme Court and the Sixth Circuit, this is insufficient to show that evidence of firearms would be found at the Shiawassee residence.

### b. The good faith exception to the exclusionary rule does not cure the constitutional violation

The good faith exception does not apply to officers' violation of Mr. Lee-Stinson's constitutional right against this unreasonable search of Shiawassee. The Supreme Court held in *United States v. Leon*, 468 U.S. 897 (1984) that the exclusionary

rule does not apply where an executing officer has reasonably relied on a warrant issued by a neutral and detached magistrate—the "good faith exception." However, the Supreme Court emphasized that the good faith exception will not always allow for the admission of illegally seized evidence. *Id.* at 922 ("We do not suggest, however, that exclusion is always appropriate where an officer has obtained a warrant and abided by its terms."). Particularly, the Supreme Court and the Sixth Circuit emphasize that the exception does not apply where a warrant is "based on an affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Ronnie Buffer*, 529 F. App'x 482, 486 (6th Cir. 2013) (construing *Leon*). *See also United States v. Lester*, 184 F. App'x 486, 494 (6th Cir. 2006) (finding agents did not "investigate[] the house in a good faith search for evidence" indicating that the defendant was involved in an "ongoing involvement in a drug conspiracy or that his residence was being used in a drug conspiracy.").

The government cannot excuse the Fourth Amendment violation here because the affidavit had no meat on its bones as to the allegation firearms would be found *inside* Shiawassee. "A bare bones affidavit is one that merely "states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *McPhearson*, 469 F.3d at 525-26 (internal quotations omitted).

When reviewing whether the warrant application supported a finding of probable cause, the reviewing district judge "is limited to the information presented in the four

13

corners of the affidavit." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009). "The good-faith inquiry requires examination of the affidavit for particularized facts that indicate veracity, reliability, and basis of knowledge and go beyond bare conclusions and suppositions." *McPhearson*, 469 F.3d at 526. "Although the good-faith standard is less demanding than the standard for probable cause, the affidavit still must draw some plausible connection to the residence." *Brown*, 828 F.3d at 385-86. This one did not. No reasonable officer could conclude these inferences upon inferences are enough to justify the search of Lee-Stinson's home—the place where the Fourth Amendment's protections are strongest. *See Payton v. New York*, 445 U.S. 573, 585 (1980) ("[T]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." (internal quotations omitted).

## IV.     CONCLUSION

Law enforcement used a deficient warrant to enter the Shiawassee residence in violation of the Fourth Amendment. The affidavit lacked any basis upon which an officer could reasonably rely to justify the search of the home. Accordingly, all fruits of the Shiawassee residence must be suppressed.

        Respectfully submitted,

        **FEDERAL COMMUNITY DEFENDER**

        *s/Daniel S. Dena*
        *s/Celeste C. Kinney*
        Attorneys for Mr. Lee-Stinson
        613 Abbott St., Ste. 500
        Detroit, Michigan 48226
        (313) 967-5542
        daniel_dena@fd.org

Dated: March 9, 2023