UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JAMAR LEE-STINSON,<br><br>    Defendant. | Case No. 22-20505<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO SUPPRESS [27]**

Several Detroit police officers suspected that Jamar Lee-Stinson, a convicted felon, fired a gun at a gas station in Detroit in November 2021. (ECF No. 27, PageID.55, 58.) In the course of their investigation, the officers recovered high-resolution surveillance footage of the gas station shooting, identified Lee-Stinson from that footage with the help of one of his associates, learned that Lee-Stinson lived in a specific apartment in Southfield, Michigan, and confirmed that he lived there by checking with the apartment's management and by knocking on his door. (*Id.* at PageID.55.) An officer with the Detroit Police Department then prepared an affidavit attesting to these facts. (*See generally* ECF No. 27-1.) He also noted that, based on his training and experience, "[i]t is common practice for individuals who possess firearms . . . to store [them] . . . on their person, in their vehicle, and/or in their residence." (*Id.* at PageID.77.)

Relying on that affidavit, a state-court magistrate issued a warrant to search Lee-Stinson's apartment and seize firearms and a few other items that might be found there. (*Id.* at PageID.78.) During the subsequent search, officers recovered "several firearms, ammunition, an iPhone, clothing, and a DTE bill addressed to . . . Lee-Stinson." (ECF No. 27, PageID.55.) Additional testing of the seized firearms linked one of them to a carjacking committed just a few days after the gas station shooting. (ECF No. 28, PageID.87.)

Lee-Stinson was indicted in federal court in October 2022 on one count of carjacking and one count of discharging a firearm during and in relation to a crime of violence. (*See* ECF No. 1.) He now asks the Court to suppress the evidence seized from his apartment. (*See generally* ECF No. 27.) The government opposes the motion. (ECF No. 28.) Because Lee-Stinson only contests the legal conclusions drawn by the magistrate, the Court considers the motion without a hearing. *See United States v. Goodwin*, 552 F. App'x 541, 548 (6th Cir. 2014) ("An evidentiary hearing is required only when the defendant has set forth contested issues of fact that bear upon the legality of the search." (internal quotation marks omitted)).

For the reasons that follow, and especially because the Sixth Circuit law makes clear that the search warrant affidavit here was sufficient to establish probable cause, the Court will deny the motion to suppress.

I.

The Fourth Amendment directs that a search warrant may only be issued "upon probable cause, supported by Oath or affirmation, and particularly describing

2

the place to be searched, and the . . . things to be seized." U.S. Const. amend. IV. Probable cause exists if "the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018) (quoting *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996)). However, even when a search is conducted without probable cause, the evidence will not be suppressed if the officers relied on the magistrate's determination of probable cause in good faith. *United States v. Leon*, 468 U.S. 897, 922 (1984).

Lee-Stinson says that the search violated the Fourth Amendment because the magistrate issued the warrant without probable cause and because the officers could not have acted in "good faith reliance" on the warrant. (ECF No. 27, PageID.55–56.) The Court will take each argument in turn.

A.

When presented with an application for a search warrant supported by an affidavit, a magistrate must examine the four corners of the affidavit, consider the totality of the circumstances, and "make a practical, common-sense decision" about whether probable cause exists for the search. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018). That decision must consider whether the affidavit provided a sufficient "nexus between the place to be searched and the evidence sought[,]" rather than simply suggesting that the owner of the residence is suspected of a crime. *United States v. Williams*, 544 F.3d 683, 686

3

(6th Cir. 2008); *Peffer v. Stephens*, 880 F.3d 256, 270 (6th Cir. 2018). And in deciding probable cause, the magistrate is permitted to give "considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and [is] entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the crime and type of offense." *Williams*, 544 F.3d at 686. A reviewing court should afford "great deference" to a magistrate's decision to issue a warrant. *United States v. Terry*, 522 F.3d 645, 647–648 (6th Cir. 2008).

Lee-Stinson says the search warrant was insufficient to establish probable cause because the affidavit did not demonstrate a "nexus between the . . . residence and [the officer's] belief that evidence of firearms would be found inside the residence." (ECF No. 27, PageID.57.) In particular, he argues that the "only bases offered to support the inference that evidence of firearms might be found at the . . . residence are: (1) Mr. Lee-Stinson's alleged involvement in a shooting at a gas station in Detroit; (2) law enforcement's knowledge that Mr. Lee-Stinson likely lives at the . . . address; and (3) a generalized suspicion that Lee-Stinson would keep a firearm at his residence." (ECF No. 27, PageID.62.) According to Lee-Stinson, "all the affidavit does is provide probable cause that Mr. Lee-Stinson *lives*" at the apartment, not that evidence of a crime could be found there. (*Id.* at PageID.64.)

The Court is not persuaded for two reasons.

First, a magistrate may "infer a nexus between a suspect and his residence, depending upon the type of crime being investigated, the nature of things to be seized,

4

the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *Williams*, 544 F.3d at 686 (internal quotation marks omitted). The Sixth Circuit, and adhering district courts, have consistently concluded that "a suspect's use of a gun in the commission of a crime is sufficient to find a nexus between the gun that was used and the suspect's residence." *Peffer*, 880 F.3d at 270; *see also United States v. Goodwin*, 552 F. App'x 541, 546 (6th Cir. 2014); *United States v. Vanderweele*, 545 F. App'x 465, 469 (6th Cir. 2013); *Williams*, 544 F.3d at 686–87; *United States v. Moss*, No. 22-20086, 2022 WL 16716147, at *2 (E.D. Mich. Nov. 4, 2022); *United States v. Jamison*, No. 19-20798, 2021 WL 37483, at *5 (E.D. Mich. Jan. 5, 2021); *United States v. Bland*, No. 18-CR-20555, 2018 WL 6171609, at *2 (E.D. Mich. Nov. 26, 2018). As one court explained, "firearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time." *Bland*, 2018 WL 6171609, at *2. Further, since felons like Lee-Stinson are "unable to obtain firearms through legitimate business dealings" and risk punishment for possessing them, they have an even greater incentive to keep and conceal their guns than lawful gunowners. *See id.*

Given these permissible inferences, there was a sufficient nexus between the gun and Lee-Stinson's apartment to support a finding of probable cause. As the government points out, the affidavit stated that Lee-Stinson was a convicted felon; that his face was clearly visible on high-resolution surveillance video which showed him shooting a gun; that his associate identified him from the video; and that both his apartment's management and law enforcement confirmed that he lived at the

apartment that was to be searched. (*See* ECF No. 28, PageID.96.) These facts allowed the magistrate to infer that Lee-Stinson was involved in the shooting, that he lived at the apartment, and that the gun and other evidence may well be located in the apartment less than three weeks later. *See Peffer*, 880 F.3d at 271. So, contrary to Lee-Stinson's assertions, the type of crime being investigated—a shooting—and the nature of the evidence sought—a gun—support the magistrate's finding of probable cause.

Resisting this conclusion, Lee-Stinson cites to Sixth Circuit cases finding that a suspect's status as a drug dealer is insufficient to find a nexus between the drugs and the suspect's home. (ECF No. 27, PageID.62 (citing *United States v. Frazier*, 423 F.3d 526, 532–33 (6th Cir. 2005)); ECF No. 30, PageID.121 (citing *United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016)).) True, but the Sixth Circuit has made clear that drugs and guns are not analogous in this context. *See Peffer*, 880 F.3d at 272. In *Peffer*, the Court considered the "connection between the objects used in a crime and the alleged criminal's residence." *Id.* at 271. It concluded that the caselaw "is clear that the use of a gun in the commission of a crime is sufficient to establish a nexus between the suspected criminal's gun and his residence." *Id.* But it noted that the Court has been "more reticent" to find a nexus between drugs and their distributors' residences because "when drugs are used in the commission of a distribution offense, the distributed drugs are no longer in the possession of the suspected distributor." *Id.* at 273. In contrast, "guns . . . are objects that generally remain in the suspect's possession after commission of the crime, and therefore it is

6

reasonable to believe those possessions to be stored at the suspect's residence, absent evidence to the contrary." *Id.*

Second, the magistrate was not left to infer a nexus between the gun and Lee-Stinson's residence on his or her own. Instead, the officer who authorized the affidavit spent nine paragraphs explaining that, based on his training and experience, "[i]t is common practice for individuals who possess firearms . . . to store [them] . . . in their residence." (ECF No. 27-1, PageID.77.) The magistrate was thus permitted to afford "considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found[.]" *See United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008).

"Because [the officer] executed a valid warrant supported by probable cause as to a connection between the [gun] and the . . . residence," Lee-Stinson's Fourth Amendment rights were not violated, and the evidence will not be suppressed. *See Peffer*, 880 F.3d at 273.

## B.

Even if the Court reached a contrary conclusion about the validity of the warrant, the good-faith exception to the exclusionary rule would apply. *See United States v. Leon*, 468 U.S. 897, 918–21 (1984). Following *Leon*, courts presented with a motion to suppress evidence for lack of probable cause must ask "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's decision." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017). The court need only find "a minimally sufficient nexus between the illegal activity

7

and the place to be searched to support an officer's good-faith belief in the warrant's validity." *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004).

Here, for the reasons just given, the affidavit provided enough information to establish a minimally sufficient nexus between the gun and Lee-Stinson's apartment.

## II.

For all of these reasons, Lee-Stinson's motion to suppress (ECF No. 27) is DENIED.

SO ORDERED.

Dated: April 14, 2023

                                         s/Laurie J. Michelson
                                         LAURIE J. MICHELSON
                                         UNITED STATES DISTRICT JUDGE